**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Silvana B. Cancanon,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-04319-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Silvana B. Cancanon, which challenges the Social Security Administration's decision to deny benefits. (Doc. 16). For the following reasons, the Court vacates the ALJ's decision and remands for consideration in accordance with this opinion.

**BACKGROUND**

On May 22, 2013, Plaintiff applied for disability insurance benefits, alleging a disability onset date of January 1, 2013. (Tr. at 21). Plaintiff's claim was denied both initially and upon reconsideration. (Tr. at 146; Tr. at 162). Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (Tr. at 21). The ALJ conducted a hearing on the matter on October 13, 2015, as well as a supplemental hearing on April 5, 2016, and subsequently issued a decision denying benefits. (Tr. at 21). Plaintiff then appealed her decision to the Appeals Council, which denied her request for review. (Tr. at 1).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. at 23–31). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 24). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative changes of the spine, arthralgia and obesity. (*Id.*). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. at 25).

At that point, the ALJ determined Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff could perform light work prior to August 25, 2015. (Tr. at 32). The ALJ thus determined at step four that Plaintiff retained the RFC to perform her past relevant work as a "home companion." (Tr. at 37). The ALJ did not reach step five. (Tr. at 38).

## DISCUSSION

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

## I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff argues that the ALJ erred by: (1) giving little or no weight to the opinions of treating physician Dr. Mertens and examining physician Dr. Peachy, (2) improperly evaluating Plaintiff's testimony as to her symptoms, and by (3) improperly discrediting the testimony of Plaintiff's daughter. (Doc. 16 at 1-2).

### A. ALJ's Evaluation of Various Physician Opinions

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations and quotation marks omitted). "[T]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining

physician *or* a treating physician." *Id.* (emphasis in original) (internal quotation marks and citations omitted). But if a treating doctor's opinion is contradicted by another nonexamining physician, it may then be rejected for "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the ALJ gave great weight to the state agency physicians Dr. Keer and Dr. Metcalf. (Tr. at 29). The ALJ gave limited weight to the opinion of Dr. Peachy, and little weight to the opinion of Dr. Mertins. (Tr. at 29; Tr. at 28).

### 1. Dr. Peachy's Opinion

During his exam of Ms. Cancanon, Dr. Peachy made findings that:

> [T]he claimant would be limited to lifting and/or carrying ten pounds occasionally and less than ten pounds frequently. He determined that the claimant would be limited to standing about two hours in an eight-hour day and sitting approximately three hours in an eight hour day. He found that the claimant should never stoop, kneel, crouch, and crawl and only occasionally reach, handle, finger and feel.

(Tr. at 29; Tr. at 455–456). The ALJ rejected this opinion for two reasons. First, the ALJ discredited Dr. Peachy's opinion because it was based on one examination of the Plaintiff. (Tr. at 29). Second, the ALJ rejected this opinion because claimant was working part time and may not have disclosed that fact to Dr. Peachy. (*Id.*).

"[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31. The fact that a consultative examiner examined the claimant on only one occasion may be considered when evaluating that examiner's opinion—especially where the ALJ is instead crediting the conclusions of a treating physician who has seen the claimant on multiple occasions. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). But it cannot be the only specific and

legitimate reason for discrediting a consultative examiner's opinion when the ALJ has at the same time given great weight to the state agency physicians who similarly examined the claimant on one occasion. *See Pontzious v. Berryhill*, 2017 WL 6276371 at *5 (D. Ariz. 2017).

The only other evidence the ALJ cites to support his decision to discredit Dr. Peachy's opinion is a progress note from Dr. Mertins which indicated that Ms. Cancanon was working part time when she saw Dr. Peachy. But that note specifies that "it has been very difficult for her to work because of the above-mentioned pain." (Tr. at 28; Tr. at 482). There is no contradiction between that progress note, which acknowledges that it has been "very difficult" for the claimant to work, and Dr. Peachy's assessment, which describes a limited amount of activity that can be performed without pain.[3] It therefore cannot be relied upon as substantial evidence supporting a specific and legitimate reason for discrediting his opinion.

The ALJ thus erred by giving little weight to the opinion of the agency's consultative physician, Dr. Peachy.

### 2. Dr. Mertins Opinion

The ALJ also discredited the opinion of Ms. Cancanon's treating physician, Dr. Mertins. Dr. Mertins found that:

> The claimant could not perform work eight hours a day, five days a week on a regular and consistent basis. He found that the claimant would be limited to sitting less than two hours in an eight-hour day, standing and/or walking less than two hours in an eight-hour day and lifting and/or carrying less than ten pounds.

(Tr. at 28).

A physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). However, "[i]f a treating provider's

---

[3] The record also contains evidence that Ms. Cancanon could no longer function in her job during 2013 because of the pain due to her medical condition. (Tr. at 493).

- 5 -

opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)); *see also Regennitter v. Commr of Soc. Sec. Admin*, 166 F.3d 1294, 130 (9th Cir. 1999) (noting that where there was "[no] indication that Regennitter was malingering or deceptive. . . neither psychologist should be faulted for believing Regennitter's complaints.").

The ALJ rejected Dr. Mertins' opinion in part, because his opinions "were clearly based on what the claimant told him." (Tr. at 28). But the ALJ did not state that there was evidence Ms. Cancanon was malingering. Absent evidence of credibility issues or malingering, the ALJ cannot use Dr. Mertin's reliance on her complaints as a specific and legitimate reason for discrediting his opinion. *See Ghanim*, 763 F.3d at 1162. Moreover, Dr. Mertins relied upon evidence other than Ms. Cancanon's subjective complaints, including an MRI that was taken on Ms. Cancanon, and physical examinations. (Tr. at 27). And in his questionnaire, Dr. Mertins specifically noted that "the limitations result from objective, clinical or diagnostic findings which have been documented . . . in the patient's medical records." (Tr. at 604).

The ALJ also stated generally that the findings of Dr. Mertins should be discredited because it was "inconsistent with the generally negative or otherwise mild diagnostic findings." (Tr. at 27). Without further explanation, this cannot be a "specific and legitimate reason" for discrediting Dr. Mertins' opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

**B. Evaluation of Ms. Cancanon's Symptom Testimony**

When a claimant alleges subjective symptoms, like pain, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant

"must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. at 1281.

At the first step, the ALJ found that Ms. Cancanon's underlying impairments could reasonably be expected to produce the symptoms alleged. (Tr. at 26). The ALJ did not find any evidence of malingering. (*Id.*). But at the second step, the ALJ found that her symptom testimony should be rejected for two reasons. First, the ALJ reasoned that because symptom testimony about daily activities cannot be objectively verified, it should be rejected. But this is true of all symptom testimony and is not a clear and convincing reason to discredit her testimony. Second, the ALJ stated that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and unremarkable diagnostic evidence for the period under review." (Tr. at 27).

At the second step, if the "evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). But the Court "may not affirm [the ALJ's decision] simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). When evaluating symptom testimony, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not

credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original). The ALJ did not meet this requirement here; he failed to make specific findings to supporting his adverse credibility determination.

Reading the ALJ's opinion, the Court is left to guess at what "other reasons" apart from claimant's medical condition could cause the alleged symptoms—the ALJ does not explain this aspect of his reasoning. Nor does the ALJ explain what he means by "the relatively weak medical evidence," (Tr. at 27), or how that evidence conflicts with Ms. Cancanon's symptom testimony. *See Burrell* 755 F.3d at 1138. After all, the ALJ had already determined that Ms. Cancanon produced sufficient medical evidence demonstrating underlying impairments that could produce the symptoms alleged.

As for the "unremarkable diagnostic evidence," the ALJ appears to be referencing his own evaluation of the "diagnostic studies." (Tr. at 27). But the list of diagnostic studies the ALJ references has objective findings that could support the symptom testimony alleged, including a diagnosis of degenerative disk disease and arthritis of the left knee. (Tr. at 27). And while the ALJ is responsible for weighing the medical evidence, an ALJ may not substitute his own medical judgment for that of medical experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (stating that the ALJ is "simply not qualified to interpret raw medical data in functional terms"). In any event, an "absence of medical records regarding alleged symptoms is not itself enough to discredit a claimant's testimony." *Trevizo v. Berryhill*, 871 F.3d 664, 682 n.10 (9th Cir. 2017) (citing *Robbins*, 466 F.3d at 883).

At one point in his opinion, the ALJ noted that "the claimant presented to the hearing with the cane; however, there was no evidence that the claimant's cane was medically necessary prior to the established onset date. Moreover, the claimant testified that she did not start using this cane until December 2015." (Tr. at 28). The ALJ did not explain

whether he was simply noting that the use of a cane did not support her symptom testimony during the period of non-disability, or if instead, he was using it as evidence that she was malingering. In any event, the ALJ determined that she was disabled for the period when Ms. Cancanon used the cane, so it is not particularly relevant to her symptom testimony as to the disputed period here.

### C. The ALJ's Evaluation of Vanessa Spatoliatore

To discount the testimony of a lay witness, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Commissioner concedes that most of the reasons the ALJ gave for discounting Ms. Spatoliatore's testimony were improper. (Doc. 20 at 22). The only disputed issue is whether the ALJ can discredit a lay witness, solely because she has a "pecuniary interest" in the proceedings. While a pecuniary interest, in combination with other discrediting factors, may be enough to discredit the testimony of a lay witness, it is not sufficient *by itself* to do so. *See Valentine v. Comm'r of Soc. Security Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). If it were, lay testimony that was given by a close family member who lived with the claimant could be discredited solely on that basis. Because the ALJ gave no other valid reasons for discrediting Ms. Spatoliatore's testimony, his decision to give her testimony "little weight" was in error.

### D. Harmful Error

If an ALJ errs, the decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted). The extent of the errors in the ALJ's consideration of physician's opinion testimony, claimant's testimony, and the lay witness testimony substantially negates the validity of the ALJ's conclusion. The Court finds that the ALJ committed harmful error.

### E. Remand for Additional Proceedings

When a court finds that the ALJ committed harmful error, the Social Security Act "makes clear that courts are empowered to . . . modify[] or reverse a decision by the Commissioner 'with or without remanding the case for a rehearing.' " *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting § 405(g)). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation omitted).

Additionally, the Court hesitates to consider how the ALJ would reweigh the evidence, reevaluate the physicians' opinions and symptom testimony, or explain the more general statements from the opinion. "[T]he decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing 20 C.F.R. § 404.1527(d)(1)-(3)). And, the Court cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009).

### CONCLUSION

The ALJ's decision is not supported by substantial evidence. The ALJ rejected the opinion of Claimant's treating physician and the agency's own examining physician but failed to provide specific and legitimate reasons for doing so. The ALJ's rejection of Claimant's credibility was not supported by substantial evidence. Claimant's daily activities were not sufficient to support a finding of non-disability and general statements of a lack of objective medical evidence are not sufficient. Therefore, the Court remands to the ALJ for further consideration in line with this decision.

///
///
///
///

**IT IS THEREFORE ORDERED** that the ALJ's decision is vacated and remanded.

The Clerk of Court is directed to remand this matter for further proceedings.

Dated this 8th day of March, 2019.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge